UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALBERT WATSON,

                       Plaintiff,

      - against -

COMPAGNIE FINANCIÉRE RICHMONT
SA, and RICHEMONT NORTH AMERICA
INC.,

                     Defendants.

**ORDER**

18 Civ. 547 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          In this action, Plaintiff Albert Watson brings claims for copyright infringement against Defendants Compagnie Financiére Richmont SA ("CFR") and Richemont North America Inc. ("RNA").  Plaintiff – a professional photographer – alleges that Defendants used one of his photographs in an advertisement without his permission.  Pending before the Court are Plaintiff's motion to file a second amended complaint ("SAC") adding Richemont International S.A. ("RI") as a defendant (Pltf. Mot. Am. (Dkt. No. 67); Proposed SAC (Dkt. No. 68-1), and Defendants' motion to dismiss the Amended Complaint for failure to state a claim.  (Dkt. No. 29)

          For the reasons stated below, this Court will grant in part and deny in part Plaintiff's motion to file the proposed SAC, and will grant in part and deny in part Defendants' motion to dismiss.

# BACKGROUND

## I.   FACTS[1]

Plaintiff is a professional photographer who resides in New York.  (Proposed SAC (Dkt. No. 68-1) ¶¶ 2, 6)  The SAC alleges that he is "one of the world's most successful and prolific photographers" and has been named "one of the 20 most influential photographers of all time."  (Id. ¶¶ 6, 9)

Defendant CFR is a Swiss company with its principal place of business in Geneva.  It is "one of the world's leading luxury goods groups."  (Id. ¶¶ 3, 19)  Defendant RNA is a Delaware corporation with its principal place of business in New York, New York, and is a wholly-owned subsidiary of CFR.  (Id. ¶¶ 5, 21)  Cartier is one of the luxury good brands owned by Defendants.  (Id. ¶¶ 19, 22)  RI is a wholly-owned subsidiary of CFR, which licenses the Cartier brand to RI.  (Id. ¶¶ 20, 23)  RI is "responsible for [worldwide] production and marketing of the Cartier brand," while RNA is "responsible for the sale and marketing of the Cartier brand in North America."  (Id. ¶¶ 24-25)

This action concerns an image Plaintiff created in 1992 (the "Work"), depicting "a photograph of a celebrity superimposed over a photograph of a leopard."  (Id. ¶ 10)  The Work was registered with the United States Copyright Office in 1994.  (Id. ¶ 11)  Plaintiff owns all rights, title, and interest in the Work.  (Id. ¶ 17)  The proposed SAC alleges that

---

[1]  The following facts are drawn from the proposed SAC and are presumed true for purposes of resolving Plaintiff's motion to amend.  See Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc., No. 08 Civ. 1533 (BSJ) (JCF), 2011 WL 1142916, at *4 (S.D.N.Y. Mar. 22, 2011); see also Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). "Because determinations of futility on a motion for leave to amend are subject to the same standards as motions under Rule 12(b)(6), '[f]utility is generally adjudicated without resort to any . . . evidence [outside the face of the complaint].'"  Gary Friedrich Enterprises, LLC, 2011 WL 1142916, at *4 (quoting Wingate v. Gives, No. 05 Civ. 1872 (LAK) (DF), 2009 WL 424359, at *5 (S.D.N.Y. Feb. 13, 2009)).

> Plaintiff's Work is famous and iconic, is a part of Plaintiff's private collection and has never been used for commercial purposes.  Plaintiff has sold single framed and signed versions of Plaintiff's Work to collectors for as much as $100,000.  Plaintiff has received and rejected numerous highly lucrative offers for use of Plaintiff's Work for advertising campaigns.  Plaintiff has consistently rejected any offers for use of Plaintiff's Work for commercial purposes because such offers would diminish the exclusive nature of his works and thus ultimately destroy the value of Plaintiff's Work and other works of Plaintiff that are not available for commercial purposes.

(Id. ¶¶ 12-15)

In August and September of 2016, Defendants sponsored the St. Moritz Arts Masters art festival in St. Moritz, Switzerland.  (Id. ¶¶ 27-28)  Plaintiff allowed the festival to reproduce the Work, along with his image and name, for display at the festival.[2]  (Id. ¶¶ 30-31)

Defendants inquired about using the Work for a Cartier advertisement, but "[t]hese requests were unambiguously rejected and Defendants were duly informed that Plaintiff's Work was not available for commercial use at any price."  (Id. ¶ 34)  "Plaintiff did not grant permission to anyone to use Plaintiff's Work or Plaintiff's name and likeness for any purpose other than the [a]rt [f]estival."  (Id. ¶ 33)

"Without receiving any authorization, consent or approval from Plaintiff, Defendants CFR, RI and RNA copied Plaintiff's Work and reproduced and published Plaintiff's Work in print advertisements [(the "Advertisement")] for Defendants."  (Id. ¶ 35)  The Advertisement – which featured the Work, Plaintiff's name and image, and the Cartier logo – appeared on the back cover of Ideabooks magazine "from February 2017 through the summer of 2017."  (Id. ¶¶ 37-39)

---

[2]  In connection with the festival, Defendant CFR produced about ten posters of the Work without Plaintiff's permission.  (Id. ¶ 32)  "Plaintiff was upset about CFR's actions, but given the limited quantity and the low resolution of the posters, Plaintiff reluctantly agreed to sign a few posters to be given to attendees as prizes."  (Id.)

"Ideabooks is a globally recognized and very prominent publication in [a]rt and [p]hotography," and "issues bearing the [Advertisement] were circulated throughout the world," including the United States.  (Id. ¶¶ 40, 42)  For example, issues containing the Advertisement were circulated and distributed in New York, including through the Rizzoli bookstore in Manhattan on May 13 and 14, 2017.  (Id. ¶¶ 43-44)  Moreover, digital copies of Ideabook with the Advertisement were e-mailed to readers in the United States, and were uploaded to the internet and made available for download by readers in the United States.  (Id. ¶¶ 45-46)  The SAC alleges that Plaintiff demanded that Defendants cease and desist use of the Work, and that Defendants admit that they used the Work without Plaintiff's permission.  (Id. ¶¶ 47-48)

## II.  **PROCEDURAL HISTORY**

The Complaint was filed on January 22, 2018.  The Amended Complaint was filed on May 31, 2018, and raises claims for (1) copyright infringement and (2) violation of Sections 50 and 51 of the New York Civil Rights Law.  (Dkt. Nos. 1, 23)

On September 28, 2018, Defendants CFR and RNA moved to dismiss for failure to state a claim, while CFR moved to dismiss for lack of personal jurisdiction.  (Def. Mot. (Dkt. No. 29))

On September 30, 2019, this Court denied without prejudice CFR's motion to dismiss for lack of personal jurisdiction, and directed the parties to conduct jurisdictional discovery for thirty days.  (Sept. 30, 2019 Order (Dkt. No. 41) at 1)[3]  As to Defendants' motion to dismiss for failure to state a claim, this Court requested supplemental briefing regarding the issues of contributory copyright infringement and the New York Civil Rights Law.  (Id. at 2)

---

[3] All references to page numbers in this Order are as reflected in this District's Electronic Case Files ("ECF") system.

The supplemental briefing was fully submitted on November 4, 2019.  (Def. MTD Supp. Br.

(Dkt. No. 43); Pltf. MTD Supp. Br. (Dkt. No. 46))

        On December 9, 2019, the parties submitted a joint letter summarizing the results

of jurisdictional discovery.  CFR sought to renew its motion to dismiss for lack of personal

jurisdiction.  (Dec. 9, 2019 Joint Ltr. (Dkt. No. 61) at 3)

        In a December 5, 2019 letter, Plaintiff sought leave to file a motion to amend

(Pltf. Dec. 5, 2019 Ltr. (Dkt. No. 58)), for which this Court issued a briefing schedule on

December 23, 2019.  (Dkt. No. 64)

## DISCUSSION

## I.    LEGAL STANDARDS

### A.    Motion to Amend Standard

        Under Fed. R. Civ. P. 15(a), district courts "ha[ve] broad discretion in

determining whether to grant leave to amend," Gurary v. Winehouse, 235 F.3d 793, 801 (2d Cir.

2000), and generally "leave to amend should be freely granted when 'justice so requires.'"

Pangburn v. Culbertson, 200 F.3d 65, 70 (2d Cir. 1999) (quoting Fed. R. Civ. P. 15(a));

Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234 (2d Cir. 1995) ("The Supreme

Court has emphasized that amendment should normally be permitted, and has stated that refusal

to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.'" (quoting

Foman v. Davis, 371 U.S. 178, 182 (1962))).

        "When a proposed amendment seeks to add an additional party, Federal Rule of

Civil Procedure 21, which allows for the addition of a new party 'at any time, on just terms,' is

also implicated."  Raji v. Societe Generale Americas Sec. LLC, No. 15 CIV. 1144 (AT), 2016

WL 354033, at *2 (S.D.N.Y. Jan. 21, 2016) (quoting Fed. R. Civ. P. 21).  "Although Rule 21,

and not Rule 15(a), normally governs the addition of new parties to an action[,] . . . the showing

necessary under Rule 21 is the same as that required under Rule 15(a)." Id. (internal quotation marks and citations omitted).

A court may properly deny leave to amend in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). "'Where it appears that granting leave to amend [would be futile or] is unlikely to be productive[,] . . . it is not an abuse of discretion to deny leave to amend.'" See Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (quoting Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)); Selvam v. Experian Info. Sols., Inc., No. 13 Civ. 6078 (DLI) (JO), 2015 WL 1034891, at *4 (E.D.N.Y. Mar. 10, 2015) (denying leave to amend after granting motion to dismiss because "[t]he [amended] complaint gives no indication that Plaintiff has a colorable claim ... and Plaintiff has already had one opportunity to amend the complaint"); Murdaugh v. City of N.Y., No. 10 Civ. 7218(HB), 2011 WL 1991450, at *2 (S.D.N.Y. May 19, 2011) ("Although . . . leave to amend complaints should be 'freely given,' leave to amend need not be granted where the proposed amendment is futile." (citations omitted)).

"[A] party opposing a motion to amend . . . bears the burden of establishing that an amendment would be futile." Bonsey v. Kates, No. 13 Civ. 2708 (RWS), 2013 WL 4494678, at *8 (S.D.N.Y. Aug. 21, 2013) (citing Blaskiewicz v. Cty. of Suffolk, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998)). "Ordinarily, leave to amend may be denied on the basis of futility if the proposed claim would not withstand a Rule 12(b)(6) motion to dismiss." Summit Health, Inc. v. APS Healthcare Bethesda, Inc., 993 F. Supp. 2d 379, 403 (S.D.N.Y. 2014), aff'd sub nom. APEX

Employee Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc., 725 F. App'x 4 (2d Cir. 2018)

(citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir.

2002)).

### B.    Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the

complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing

Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)),

and must "draw all reasonable inferences in favor of the plaintiff."  Id. (citing Fernandez v.

Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of

'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and

does not provide factual allegations sufficient "to give the defendant fair notice of what the claim

is and the grounds upon which it rests."  Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.,

507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

## II.    ANALYSIS

### A.    Undue Delay

Defendants argue that "Plaintiff's proposed amendment to add [RI] is [] the

product of two years of undue delay – since Plaintiff could have and should have named [RI] as a

defendant in 2018 if Plaintiff truly had grounds to do so."  (Def. MTA Opp. Br. (Dkt. No. 71) at

18)  Further, "the organizational chart produced by Defendants in jurisdictional discovery is just

an organizational chart.  It contains no information pertinent to naming [RI] as a defendant, and

[RI] is and always was publicly identifiable as a wholly-owned subsidiary of CFR."  (Id.)

Plaintiff claims that he "sought leave to amend immediately upon receiving

jurisdictional discovery."  (Pltf. MTA Br. (Dkt. No. 69) at 13)

The record reflects that at the May 10, 2018 initial pretrial conference, Plaintiff

gave notice that he intended to amend, stating that "one of the [Defendants'] allegations is that

we sued the wrong defendant, and at some point in time, we're going to plead to amend [adding

the defendant] that now we know is the proper one."  (May 10, 2018 Tr. (Dkt. No. 35) at 4-5)

Plaintiff proposed that jurisdictional discovery proceed first, with Plaintiff's motion to amend

filed after.  (Id. at 5)  Defense counsel responded, "I'm in agreement.  I think he had already

conceded that he was planning to amend, and obviously we don't have an issue with that.  He has

a right."  (Id.)  Defense counsel argued, however, that this Court should first resolve the

"threshold question of the validity of the claims before [any discovery was conducted]."  (Id. at

7)  Plaintiff therefore filed the Amended Complaint on May 31, 2018, without the benefit of

jurisdictional discovery, and Defendants' motion to dismiss was briefed in subsequent months.

Defendants agree that the organizational chart (Susmane Decl., Ex. B (Dkt. No.

68-2) at 2) was not available to Plaintiff until jurisdictional discovery.  (Def. MTA Opp. Br.

(Dkt. No. 71) at 20-21)  They argue, however, that because RI is publicly known as a subsidiary

of CFR, Plaintiff should have named RI in the Complaint or Amended Complaint.

The Court concludes that the organizational chart produced to Plaintiff in

jurisdictional discovery provides significant additional information concerning RI's status as an

operating subsidiary of CFR.  Given the liberal standard that applies to motions to amend,

Defendants' resistance to jurisdictional discovery prior to filing their motion to dismiss, and the

additional information from the organizational chart, the Court concludes that Plaintiff did not unduly delay in seeking permission to add RI as a defendant.[4]

### B.   <u>Prejudice or Bad Faith</u>

Defendants argue that the "lengthy period of unexplained delay is more than enough to show undue prejudice."  (Def. MTA Opp. Br. (Dkt. No. 71) at 19)  According to Defendants, "Plaintiff has uncovered no new facts pointing to [RI]'s involvement in the alleged underlying infringement," and Plaintiff's "attempt to expand the case to add [RI] is being made in bad faith solely to prevent a ruling on Defendants' already-pending motion to dismiss."  (<u>Id.</u> at 21)

As discussed above, there has been no undue delay.  Moreover, Defendants have not identified any unfair prejudice resulting from the alleged delay.  Nor have Defendants shown that Plaintiff's use of the limited information he received in jurisdictional discovery constitutes evidence of bad faith.  RI is in fact a wholly-owned subsidiary of CFR.  <u>See</u> <u>Topps Co., Inc., v.</u> <u>Cadbury Stani, S.A.I.C.</u>, No. 99 Civ. 9437 (CSH) (GWG), 2002 WL 31014833, at \*2 (S.D.N.Y. 2002) ("any prejudice is mitigated somewhat by the fact that the new party that is proposed to be added is the corporate parent of [an existing defendant]").

Defendants also cite "Plaintiff's inconsistent representations to this Court about the value of what he received during jurisdictional discovery."  (Def. MTA Opp. Br. (Dkt. No. 71) at 22)  In letters to the Court,  Plaintiff represents that he did not "receive any meaningful jurisdictional discovery" (Dec. 4, 2019 Pltf. Ltr. (Dkt. No. 55) at 1), and that Defendants only

---

[4]  Plaintiff also alleges in the proposed SAC that Monte Shadow is an RI employee who was involved in the alleged infringement.  (<u>See</u> Proposed SAC (Dkt. No. 68-1) ¶ 36)  Defendants do not contend that Plaintiff had knowledge of Shadow or his employment by RI prior to jurisdictional discovery.

produced "a single page responsive to Plaintiff's [jurisdictional] discovery requests," that being the organizational chart.  (Dec. 9, 2019 Pltf. Ltr. (Dkt. No. 61) at 1)  Although Plaintiff appears to have been dissatisfied with the jurisdictional discovery produced by Defendants, the evidentiary value of the organizational chart speaks for itself.

The Court concludes that Defendants have not shown bad faith or unfair prejudice if leave to amend is granted.

C.    **Futility**

The proposed SAC pleads copyright infringement and violations of Sections 50 and 51 of the New York Civil Rights Law.  Defendants argue that adding RI as a defendant on these claims would be futile, because Plaintiff's claims are defective as to both RI and Defendants.  (Def. MTA Opp. Br. (Dkt. No. 71) at 12-17)

1.    **Copyright Infringement**

Plaintiff claims that RI is liable for direct, contributory, and vicarious infringement of his copyright.  (Proposed SAC (Dkt. No. 68-1) ¶¶ 80-82)

Defendants argue that Plaintiff fails to state a claim against RI, because "all of the allegedly infringing conduct took place outside of the United States."  (Def. MTA Opp. Br. (Dkt. No. 71) at 13)

"To establish copyright infringement, 'two elements must be proven:  (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"  Williams v. Crichton, 84 F.3d 581, 587 (2d Cir. 1996) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).

> To demonstrate unauthorized copying, the plaintiff must first show that his work was actually copied; second he must establish substantial similarity or that the copying amounts to an improper or unlawful appropriation, i.e., (i) that it was protected expression in the earlier work that was copied and (ii) that the amount that was copied is more than de minimis.

Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 131 (2d Cir.

2003) (internal quotation marks and citation omitted).  "Thus, as an initial matter, a plaintiff must

show that the defendant 'actually copied' [plaintiff's] work."  Gal v. Viacom Int'l, Inc., 518 F.

Supp. 2d 526, 536-37 (S.D.N.Y. 2007).

   "It is well established that copyright laws generally do not have extraterritorial

application.  There is an exception – when the type of infringement permits further reproduction

abroad – such as the unauthorized manufacture of copyrighted material in the United States."

Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 73 (2d Cir. 1988).  This exception is known

as the "predicate act exception."  See Levitin v. Sony Music Entm't, 101 F. Supp. 3d 376, 385

(S.D.N.Y. 2015).  Where all of a defendant's allegedly infringing conduct occurred outside of

the United States, however, that defendant may not be found liable for direct copyright

infringement.  Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co., Ltd., No. 00 Civ.

9605(DFE), 2002 WL 72930, *1 (S.D.N.Y. 2002) (holding that a defendant who had

manufactured infringing goods abroad and committed no infringing acts in the United States

could not be liable for direct copyright infringement, despite selling those goods to a third party

that imported them into the United States); see also Roberts v. Keith, No. 04 CV 10079(LAP),

2009 WL 3572962 (S.D.N.Y 2009) (holding that defendants who assisted in the release of an

infringing album in Europe were not liable for direct copyright infringement where a third-party

released the album in the United States).

   As an initial matter, it is undisputed that Plaintiff sufficiently alleges ownership

and copying, the two elements of a copyright infringement claim.  The proposed SAC alleges

that the Work is registered with the United States Copyright Office and that Plaintiff owns all

rights therein, and that Defendants copied the entirety of the Work for use in the Advertisement

without Plaintiff's permission.  (Proposed SAC (Dkt. No. 68-1) ¶¶ 11, 30, 35; Def. MTD Br.

(Dkt. No. 30) at 14-18)

              Defendants argue, however, that the proposed SAC does not allege that RI and the

other Defendants' infringing conduct took place in the United States.[5]  According to Defendants,

the proposed SAC alleges that Defendants created the Advertisement, but it does not allege that

Defendant's creation of the Advertisement took place in the United States.  Similarly, the

proposed SAC alleges that the Advertisement was published and distributed in the United States,

but it does not allege that Defendants were responsible for the claimed publication and

distribution.  Because the Copyright Act does not apply extraterritorially, Defendants contend

that Plaintiff's copyright infringement claims are defective, and that Plaintiff's request to add RI

as a defendant is futile.  (Def. MTA Opp. Br. (Dkt. No. 71) at 14)

### a. Whether Plaintiff's Direct Copyright Infringement Claim is Futile

              The proposed SAC does not allege that RI created the Advertisement – or placed

it in Ideabooks – in the United States.  And given the international character of the SAC's

allegations – for example, that Defendant CFR is a Swiss company, and that the Work was first

used by Defendants at an art festival in Switzerland – this Court cannot reasonably infer that

these actions took place in the United States.

              The proposed SAC likewise does not adequately allege that RI is responsible for

publishing and distributing Ideabooks in the United States.  The proposed SAC uses the passive

---

[5]  In support of this argument, Defendants have submitted declarations stating, inter alia, that Ideabooks is an Italian magazine, and that the Advertisement was created in Switzerland.  (Def. Br. (Dkt. No. 30) at 16; Marigotta Decl. (Dkt. Nos. 31-2, 31-3))  For purposes of resolving Plaintiff's motion to amend, however, this Court can only consider the proposed SAC's allegations, any attached documents, and documents that are integral to the SAC's claims or that are incorporated by reference.  Gary Friedrich Enterprises, LLC, 2011 WL 1142916, at *4.

voice in connection with the publication and distribution of Ideabooks – for example, Plaintiff alleges that "Ideabooks issues bearing the [Advertisement] were circulated and distributed . . . [in] the United States." (Proposed SAC (Dkt. No. 68-1) ¶ 43) Such allegations evade the question of who is responsible for publication and distribution of the Advertisement in the United States. (See id. ¶¶ 42-46) At other points in the SAC, Plaintiff alleges – in conclusory fashion – that the Advertisement was "published by Defendants throughout the world, including New York and the United States." (Id. ¶ 63; see also id. ¶¶ 35, 89) Such "'naked assertions' devoid of 'further factual enhancement'" are insufficient to state a claim for relief. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557); Energy Intelligence Grp., Inc. v. Jefferies, LLC, 101 F. Supp. 3d 332, 342 (S.D.N.Y. 2015) (plaintiff "must allege 'by what acts . . . the defendant infringed the copyright'" (quoting Kelly v. L.L. Cool J., 145 F.R.D. 32, 36, n. 3 (S.D.N.Y.1992)) (alteration in original)). To the extent that Plaintiff claims that RI and the other Defendants are responsible for the publication and distribution of a third-party magazine, no such inference can reasonably be drawn from the SAC's allegations.

The Court concludes that the proposed SAC does not adequately allege that RI – or any of the other Defendants – engaged in infringing activity in the United States. Where a "[c]omplaint falls short of making any clear allegations that [the defendant] engaged in infringing activity in the United States," it does not state a claim for direct copyright infringement.[6] Roberts v. Keith, No. 04 CV 10079 (LAP), 2009 WL 3572962, at *4 (S.D.N.Y.

---

[6] Citing Spanski Enters. v. Telewizja Polska, S.A., 883 F.3d 904 (D.C. Cir. 2018) and United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F. Supp. 2d 198 (S.D.N.Y. 2002), Plaintiff argues that "an infringement that originates abroad but terminates in the United States constitutes a domestic Copyright Act violation." (Pltf. MTA Reply Br. (Dkt. No. 70) at 9) In each case, however, the foreign defendant uploaded copyrighted material to its website without the owner's permission, and allowed United States residents to download that material. Spanksi Enters., 883 F.3d at 906; United Feature Syndicate, Inc, 216 F. Supp. 2d at 203. Accordingly, the

Oct. 23, 2009).  The proposed SAC's direct copyright claim against RI is therefore futile.

> **b.      Whether Plaintiff's Contributory**
> **Copyright Infringement Claim is Futile**

Plaintiff seeks to add a claim for contributory infringement against RI.  (Proposed

SAC (Dkt. No. 68-1) ¶ 81)

Defendants argue that Plaintiff's "allegations all sound in a theory of direct

infringement," and that "there are no allegations accusing any third party of direct infringement

of Plaintiff's copyrighted work, [and] no allegations that Defendants had knowledge of this

unidentified and unknown third party's alleged infringement, . . . [or] that Defendants

encouraged or assisted the unknown third party's direct infringement."  (Def. Supp. MTD Br.

(Dkt. No. 43) at 5)

> [A] defendant can be liable for contributory infringement [under the Copyright
> Act], even for acts committed outside the United States, by inducing or
> contributing to another's infringement occurring in the United States by supplying

---

defendants were themselves responsible for the distribution of the copyrighted material in the
United States.
In Noble v. Great Brands of Europe, Inc., 949 F. Supp. 183 (S.D.N.Y. 1996), also cited by
Plaintiff, the domestic defendants used plaintiff's photograph in a domestic advertising campaign
with plaintiff's permission, and in a foreign advertising campaign without plaintiff's permission.
Id. at 184.  In that case, the court did not consider whether the infringement claim constituted an
extraterritorial application of the Copyright Act; it appears that the predicate act exception was
applicable, because defendants' operations were located in New York.  See Fun-Damental Too,
Ltd. v. Gemmy Indus. Corp., No. 96 CIV. 1103 (MBM), 1996 WL 724734, at *4 (S.D.N.Y. Dec.
17, 1996) ("Where an individual commits an act of infringement in the United States that permits
further reproduction outside the United States – such as when an individual makes unauthorized
copies of copyrighted material and then sends them out of the country – a court may assert
jurisdiction over those foreign acts and a plaintiff may recover damages for the infringing acts
that took place extraterritorially.")

Plaintiff argues that the Noble court held that "by simply seeking 'damages for the alleged
infringement as well as an injunction against future infringements, [plaintiff's] complaint on its
face asserts a claim arising under the Copyright Act.'"  (Pltf. MTD Opp. Br. (Dkt. No. 37) at 15
(quoting Noble, 949 F. Supp. at 186))  This is a mischaracterization of Noble's holding.  While
the Noble court concluded that plaintiff stated a claim under the Copyright Act, it did not address
the issue of extraterritorial application of the Copyright Act.

> such other person with the instruments for committing the infringement, provided the defendant knew or should have known that the other would or could reasonably be expected to commit the infringement.

Blue Ribbon Pet Prods., Inc. v. Rolf C. Hagen (USA) Corp., 66 F. Supp. 2d 454 (E.D.N.Y. 1999).  "[T]he Supreme Court has strongly signaled its intent to use the doctrine of contributory infringement, not direct infringement, to 'identify[ ] the circumstances in which it is just to hold one individual accountable for the actions of another.'"  Cartoon Network LP, LLLP v. CSC Holdings, Inc., 536 F.3d 121, 133 (2d Cir. 2008) (quoting Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 435 (1984)) (second alteration in original).

"'To establish a claim for contributory copyright infringement, a plaintiff must allege that the defendant "with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing conduct of another."'"  BWP Media USA Inc. v. Hollywood Fan Sites, LLC, 69 F. Supp. 3d 342, 356 (S.D.N.Y. 2014) (quoting Wolk v. Kodak Imaging Network, Inc., 840 F.Supp.2d 724, 750 (S.D.N.Y.2012) (quoting Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971))).  "The knowledge standard is an objective one; contributory infringement liability is imposed on persons who 'know or have reason to know' of the direct infringement."  Arista Records, LLC v. Doe 3, 604 F.3d 110, 118 (2d Cir. 2010) (quoting A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1020 (9th Cir. 2001)) (emphasis omitted).

Here, the proposed SAC states a claim for contributory infringement against RI, because the SAC alleges that RI caused Ideabooks – or the entity that publishes and distributes Ideabooks – to run the Advertisement that infringes on Plaintiff's copyright.[7]  (Proposed SAC

---

[7]  Defendants contend that Plaintiff's arguments concerning "contributory and vicarious infringement . . . should be stricken as procedurally improper," because they were not explicitly discussed in Plaintiff's pre-motion letter.  (Def. MTA Opp. Br. (Dkt. No. 71) at 15 n.4)  This argument has no merit.  As an initial matter, this Court's individual rules do not require that a

(Dkt. No. 68-1) ¶¶ 35, 39, 63)  The proposed SAC further alleges that Ideabooks is a "globally recognized" magazine, and that RI and the other Defendants "should have reasonably expected that their use of Plaintiff's Work to advertise Cartier and Cartier Art on the back cover of a globally known magazine that is read widely by art collectors[] would have consequences in New York[.]"  (Id. ¶¶ 40, 79)

The Court concludes that the SAC's allegations are sufficient to demonstrate that RI knew or should have known that the Advertisement would appear in the United States.[8] Accordingly, Plaintiff's motion to amend is not futile as to the proposed contributory infringement claim.

### c.     Whether Plaintiff's Vicarious Copyright Infringement Claim is Futile

Plaintiff seeks to add a claim for vicarious infringement against RI.  (Proposed SAC (Dkt. No. 68-1) ¶ 82)  Defendants do not contest the merits of this claim, but instead argue that it is procedurally improper, because Plaintiff did not address vicarious infringement in his pre-motion letter.  (Def. MTA Opp. Br. (Dkt. No. 71) at 15 n.4)  As discussed above, that argument is not persuasive.

"[V]icarious liability rests not on the defendant's relationship to the direct infringement but rather on the defendant's relationship to the direct infringer.  Vicarious liability

---

pre-motion letter describe every argument that will be made in a proposed motion.  Moreover, there is no valid claim of a lack of notice.  Plaintiff's contributory and vicarious infringement claims are apparent from the Amended Complaint's allegations.  And Plaintiff made clear in his supplemental briefing that he was alleging contributory and vicarious infringement.  (Pltf. Supp. MTD Br. (Dkt. No. 46) at 6-10)  Defendants thus had a full and fair opportunity to respond to Plaintiff's contributory and vicarious infringement arguments.

[8]  The cases cited by Defendants (Def. Supp MTD Br. (Dkt. No. 43) at 5) are not to the contrary. See Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., 206 F. Supp. 3d 869, 897-900 (S.D.N.Y. 2016) (granting motion to dismiss contributory claim without addressing extraterritoriality); Brought to Life Music, Inc. v. MCA Records, Inc., 65 U.S.P.Q.2d 1954, 1956-57 (S.D.N.Y. 2003) (same).

may exist '[w]hen the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials[,] . . . even in the absence of actual knowledge that the copyright monopoly is being impaired. . . .'" Ez-Tixz, Inc. v. Hit-Tix, Inc., 919 F. Supp. 728, 732-33 (S.D.N.Y. 1996) (quoting Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963) (second, fourth, and fifth alterations in original). "[T]o state a claim for vicarious infringement, a plaintiff need only allege that a defendant has declined to exercise the right and ability to supervise or control the infringing activity and enjoys a direct financial benefit from the infringing activity." Rams v. Def Jam Recordings, Inc., 202 F. Supp. 3d 376, 385 (S.D.N.Y. 2016) (citations omitted).

Here, Plaintiff alleges that RI and the other Defendants "created the [Advertisement]"; "had both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so"; and "profited from [the Advertisement] while declining to exercise a right to stop or limit it." (Proposed SAC (Dkt. No. 68-1) ¶¶ 50, 56, 57) These allegations suffice.[9]

The Court also notes that a claim for vicarious infringement is readily discernible in the Amended Complaint. There, Plaintiff alleged that Defendants "copied Plaintiff's Work and reproduced and published Plaintiff's Work in print advertisements for Defendants," and that the Advertisement "appeared on the full back cover of the Ideabooks magazine," which is "globally recognized" and "circulated throughout the world." (Am. Cmplt. (Dkt. No. 23) ¶¶ 30-34) It is obvious from these allegations that RI and the other Defendants derived a financial

---

[9] While there is no requirement of actual knowledge, see Ez-Tikz, 919 F. Supp. at 733), Plaintiff also alleges that Defendants "had knowledge that the [Advertisement] would be distributed in the United States and that distribution would constitute infringement," and "directed, encouraged and/or assisted Ideabooks in publishing the [Advertisement] for Cartier and Cartier Art." (Proposed SAC (Dkt. No. 68-1) ¶¶ 52, 58)

17

benefit from the Advertisement; that they had the right to control whether the Advertisement was placed in Ideabooks; and that they did not exercise their right to stop the infringing conduct.

The Court concludes that Plaintiff has stated a claim for vicarious infringement in the proposed SAC.  Accordingly, in seeking to add this claim, the motion to amend is not futile.

### 2. **New York Civil Rights Law**

Plaintiff alleges that RI and the other Defendants have violated Sections 50 and 51 of the New York Civil Rights Law.  (Proposed SAC (Dkt. No. 68-1) ¶¶ 84-90)

Defendants argue that Plaintiff's Civil Rights Law claims against RI and the other defendants are futile, because (1) the proposed SAC does not allege actionable conduct in New York; and (2) they are time-barred.  (Def. MTA Opp. Br. (Dkt. No. 71) at 15-17)

Under the New York Civil Rights Law,

> [a]ny person whose name, portrait, picture, or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait, picture or voice, to prevent and restrain the use thereof. . . .

N.Y. Civil Rights Law § 51.  "To establish a violation of Section 51 of the New York Civil Rights Law, [a plaintiff is] required to prove (1) the use of his name, portrait, or picture, (2) for purposes of advertising or trade, (3) without consent, (4) within the state of New York" by the defendant. Marshall v. Marshall, No. 12-1783-cv, 2012 WL 6013418 at *22-23 (2d Cir. 2012) (quoting Titan Sports, Inc. v. Comics World Corp., 870 F.2d 85, 87 (2d Cir. 1989)).  The statute of limitations for such a claim is one year, with the claim accruing on the date the advertisement is first published.  N.Y. C.P.L.R. § 215(3).

Here, the proposed SAC alleges that Defendants used (1) Plaintiff's name and image (2) in the Advertisement (3) without his consent (4) in the state of New York.  (Proposed SAC (Dkt. No. 68-1) ¶¶ 35, 38, 43-45, 85-87)

Defendants argue, however, that the New York Civil Rights Law "requires that Plaintiff's 'name, portrait, [or] picture' be used by the Defendants '<u>within this state</u>.'"  (Def. MTA Opp. Br. (Dkt. No. 71) at 15 (quoting N.Y. Civil Rights Law § 51)) (emphasis added in Def. MTA Opp. Br.)  They go on to assert that "Plaintiff does not allege . . . that Defendants [] placed the Advertisement in Ideabooks <u>in New York</u> or that Defendants [] own, publish or control the distribution of Ideabooks, which is, on its face, an Italian magazine published in Italy."  (<u>Id.</u>) (emphasis in original)  Defendants' arguments are not consistent with the plain language of the statute, which refers to "use[] within the state. . . ." and not to where conduct leading up to that use occurs.  N.Y. Civil Rights Law § 51.  Defendants' interpretation also ignores the fact that Section 51 is not premised on notions of infringement, but rather on the right to privacy and the right to control use of one's own image, at least for commercial purposes.

Defendants' sole authority for their interpretation of Section 51 is <u>Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion GmbH & Co.</u>, 150 F. Supp. 2d 566 (S.D.N.Y. 2001).  In <u>Cuccioli</u>, the court held that "the offering of merchandise containing the plaintiff's image on [a] German web site did not constitute a use of the image 'within this state.'"  <u>Id.</u> at 576.  After <u>Cuccioli</u> was decided, however, the Appellate Division, First Department found that a plaintiff had adequately pleaded use in New York where she alleged that her "image on the . . . Web site was indeed available for use on a 'world wide basis,' [and] necessarily was concurrently available within New York State."  <u>Molina v. Phoenix Sound Inc.</u>, 297 A.D.2d 595, 598 (1st Dept. 2002).  Moreover, another court in this District has noted that <u>Cuccioli</u> "departs from previous decisions in our district. . . ."  <u>Zoll v. Jordache Enterprises, Inc.</u>, No. 01 CIV 1339 CSH JCF, 2001 WL 1550943, at *2 n.1 (S.D.N.Y. Dec. 5, 2001).  And more recently, the judge who decided <u>Cuccioli</u> cited <u>Molina</u> in rejecting – in another case – the defendants' argument that

"images attached to the complaint were published [on social media] by clubs outside of New York and therefore cannot give rise to a claim under Sections 50 and 51." Voronina v. Scores Holding Co., Inc., No. 16-CV-2477 (LAK), 2017 WL 74731, at *1, *5 (S.D.N.Y. Jan. 5, 2017). In sum, the New York Civil Rights Law requires unauthorized use of a plaintiff's image in New York for commercial purposes, which is what the proposed SAC pleads. It does not require proof that Defendants were in New York when they placed the Advertisement. Such an interpretation would entirely eviscerate the statute.

Defendants also argue that Plaintiff's Civil Rights Law claims against RI are barred by the one-year statute of limitations, because the Advertisement was first published in February 2017, and Plaintiff's Civil Rights Law claims against RI do not relate back to the January 22, 2018 Complaint. (Def. MTA Opp. Br. (Dkt. No. 71) at 17)

Plaintiff contends, however, that the relation-back doctrine applies, because "RI knew or should have known that, but for a mistake by the plaintiff as to the identity of the proper parties, the action would have been brought against RI as well." (Pltf. MTA Br. (Dkt. No. 69) at 15)

"[U]nder New York law, an amended complaint relates back to the original complaint where . . . the new party knew or should have known that, but for a mistake by the plaintiff as to the identity of the proper parties, the action would have been brought against that party as well." Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist., 07-CV-8828 (KMK), 2009 WL 3151200, at *12 (S.D.N.Y. Sept. 29, 2009))

While Defendants contend that RI was "'publically identifiable' . . . [such that] a court 'will not find that a mistake was made for relation-back purposes,'" this argument misses the point. (Def. MTA Opp. Br. (Dkt. No. 71) at 17 (quoting Pape, 2009 WL 3151200, at *16))

In <u>Pape</u>, the court held that plaintiffs could not amend their complaint to add the school district's superintendent because his "identity and dates of service as Superintendent are a matter of public record," and per the official policy of the district's Board of Education, he "was responsible for the execution, administration and enforcement of all policies of the district." <u>Pape</u>, 2009 WL 3151200, at *1, *15 (internal quotation marks and citation omitted).  It was also clear in Pape that plaintiffs "<u>chose</u> to name [a different defendant] . . . [so] there can be no claim of mistaken identity." <u>Id.</u> at *15 (emphasis in original).

Here, by contrast, the record demonstrates that while RI's status as a CFR subsidiary was publicly known, its role in the organizational structure – and involvement in the conduct at issue – was not known to Plaintiff when the Complaint was filed.  These facts suffice to show mistake.

As to whether RI knew or should have known of the action, Plaintiff argues that "RI is represented by the same counsel and [has] been aware of this action since its inception. [Indeed,] CFR's motion to dismiss is based largely on the argument that Plaintiff mistakenly named CFR because it is a holding company with no operations."  (Pltf. Reply Br. (Dkt. No. 70) at 8)  These circumstances justify application of the relation-back doctrine.

Accordingly, Plaintiff's motion to amend the New York Civil Rights Law claims to add RI as a defendant is not futile.

## III.   <u>MOTION TO DISMISS</u>

Defendants CFR and RNA have moved to dismiss the claims against them under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

As discussed above in connection with Plaintiff's direct copyright infringement claim, such a claim may be brought here only against entities that are responsible for publishing and distributing Ideabooks in the United States.  Neither the Amended Complaint nor the

proposed SAC contains allegations showing that CFR and RNA are responsible for publishing or distributing Ideabooks in the United States.  Accordingly, the direct copyright infringement claims against them will be dismissed.

Defendants' motion to dismiss Plaintiff's contributory and vicarious copyright infringement claims against CFR and RNA, and Civil Rights Law claims against CFR and RNA, is denied for the reasons discussed above.

## CONCLUSION

Plaintiff's motion to amend is granted to the extent that Plaintiff may file a Second Amended Complaint adding Richemont International S.A. as a defendant, and allege contributory and vicarious copyright infringement claims, and New York Civil Rights Law claims, against Richemont International S.A.  The motion to amend is otherwise denied.

Defendants' motion to dismiss for failure to state a claim is granted as to the direct copyright infringement claims against CFR and RNA, and otherwise denied.

Plaintiff will file the Second Amended Complaint by **August 31, 2020**.

A status conference in this matter will take place on **September 10, 2020 at 11:00 a.m.** by telephone.  The parties are directed to dial 888-363-4749 to participate, and to enter the access code 6212642.  The press and public may obtain access to the telephone conference by dialing the same number and using the same access code.  The Court is holding multiple telephone conferences on this date.  The parties should call in at the scheduled time and wait on the line for their case to be called.  At that time, the Court will un-mute the parties' lines. No later than **September 7, 2020**, the parties must email GardepheNYSDChambers@nysd.uscourts.gov with the phone numbers that the parties will be

using to dial into the conference so that the Court knows which numbers to un-mute.  The email should include the case name and case number in the subject line.

By **August 31, 2020**, the parties will submit a joint letter and proposed case management plan.  Plaintiff will address in the joint letter whether, in light of jurisdictional discovery, he still intends to pursue claims as to Defendant CFR.  In preparing the proposed case management plan, the parties will consult the Court's Individual Practices and model Case Management Plan and Scheduling Order – both of which are available on this District's website.

The Clerk of Court is directed to terminate the motions (Dkt. Nos. 61, 67).

Dated: New York, New York
        August 25, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge